**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------X
MALRY TARDD and OTTO WHITE,

                                  Plaintiffs,

                  -against-


BROOKHAVEN NATIONAL LABORATORY,
a.k.a. and/or d/b/a BROOKHAVEN SCIENCE
ASSOCIATES, CONRAD FORSTER, in his
individual and official capacity; MICHAEL
GOLDMAN, in his individual and official capacity;
WILLIAM HEMPFLING, in his official and
individual capacity; SUE FOSTER, in her official
and individual capacity; WALTER DEBOER, in his
official and individual capacity; STEVE DIERKER,
in his official and individual capacity; ED HAAS,
in his official and individual capacity; MICHAEL
CARUSO, in his official and individual capacity;
MICHAEL BEBON, in his official and individual
capacity; DEREK LOWENSTEIN, in his official
and individual capacity; WILLIAM GUNTER, in
his official and individual capacity; THOMAS
SHERIDAN, in his official and individual capacity;
PETER PAUL, in his official and individual
capacity; KENNETH BROG, in his official and
individual capacity,

                                  Defendants.
------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
04 CV 3262 (ADS)(ARL)

**APPEARANCES:**

**LAW OFFICES OF**
**FREDERICK K. BREWINGTON, ESQ.**
Attorneys for the Plaintiffs
50 Clinton Street, Suite 501
Hempstead, New York 11550
          By:     Frederick K. Brewington, Esq.
                  Gregory Calliste, Jr., Esq., of Counsel

**MORGAN, LEWIS & BOCKIUS, LLP**
Attorneys for the Defendants
101 Park Avenue
New York, New York 10178
      By:    Christopher A. Parlo, Esq., of Counsel

**SPATT, District J.**

Malry Tarrd and Otto White (collectively, the "plaintiffs") commenced this action against the Brookhaven National Laboratory ("BNL"), a.k.a and/or d/b/a Brookhaven Science Associates ("BSA"), Conrad Foerster s/h/a Conrad Forster, Michael Goldman, William Hempfling, Sue Foster, Walter Deboer, Steve Dierker, Ed Haas, Michael Caruso, Michael Bebon, Derek Lowenstein, William Gunther s/h/a William Gunter, Thomas Sheridan, Peter Paul, and Kenneth Brog, (collectively, the "defendants") pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000(e) et seq. ("Title VII"); 42 U.S.C. § 2000(d) et seq. ("Title VI"); 42 U.S.C. §§ 1981, 1985(3), and 1986; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law. § 296; and for alleged breach of contract. All of the individual defendants are sued in their official and individual capacities.

Presently before the Court is a motion by the defendants pursuant to (1) Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") to dismiss the amended complaint for failure to state a claim upon which relief can be granted; and (2) Fed. R. Civ. P. 12(c) for judgment on the pleadings.

## I.      BACKGROUND

The following facts are derived from the complaint and are taken as true for the purposes of this motion.

### A.      The Defendants

BSA is a nonprofit, limited-liability company, founded in 1997, and located in Upton, New York.  BSA is responsible for managing and operating BNL under contract with the United States Department of Energy.  BNL employs scientists, engineers, technicians and support staff, for the purpose of conducting research in physical, biomedical, and environmental sciences, and energy technologies.

The individual defendants are current or former employees of BNL who held various positions during the relevant time period:  Foerster was the "Manager of Mechanical Section"; Goldman was the "General Counsel of [BNL]"; Hempfling was the "Manager of Personnel (Human Resources)"; Foster was "working in Employee Relations"; Deboer was a "Supervisor"; Dierker was the "Chairman of Lightsource"; Haas was the "Mechanical Department Head"; Bebon was the "Assistant Laboratory Director for Facilities and Operations"; Lowenstein was the "Chair of the Collider-Accelerator Department"; Gunther was the "Special Assistant for Associate Director of the Life Sciences Directorate"; Sheridan was the "Deputy Director of Operations"; Paul was the "Deputy Director for Science and Technology and was, at times, also the Interim Laboratory Director"; and Brog was the "Assistant Laboratory Director for

3

Environment, Safety, Health and Quality, the Interim Assistant Laboratory Director for Environment, Safety, Health and Quality".  Although named as a defendant in the caption and mentioned in the amended complaint, the defendant Caruso's position at BNL is not specifically identified.

### B.    Malry Tardd

The plaintiff Tardd is a forty-eight year old African-American man.  Tardd began working for BNL in 1975 as a "Mechanical Technician" and has since held various positions.  Currently, Tardd is employed at BNL as a "Vacuum Technical Specialist (Technical Associate II)."  On one prior occasion Tardd alleged that BNL and its employees discriminated against him on the basis of his race.  Tardd withdrew these claims after reaching an agreement with BNL.  Tardd now alleges that, notwithstanding the terms of the agreement intended to settle his earlier claims with BNL, he was continually discriminated against.  Tardd also alleges that he was retaliated against as a result of having brought that prior complaint.

In 1996, Tardd filed a complaint with the New York State Division of Human Rights ("NYSDHR") alleging that BNL employs racially discriminatory policies with respect to hiring and promotions.  The NYSDHR found that there was probable cause to believe that BNL was guilty of discrimination and scheduled the matter for a hearing.  However, the hearing was never held because the parties were able to reach an agreement.  As evidence of their agreement, Tardd and BNL entered into a

stipulation of settlement (the "Settlement Agreement").  Under the terms of the Settlement Agreement, Tardd was promoted, received back pay, and was appointed as BNL's "Equal Opportunity Representative."  The Settlement Agreement was finalized and signed in August, 2001.

Tardd alleges that shortly after the terms of the Settlement Agreement were agreed upon, but prior to its execution, he began to "face[] an increasingly hostile work environment from his supervisors and co-workers at BNL."  The specific allegations of misconduct in the 36 page, 199 paragraph amended complaint are too numerous to all be recounted here.  The most serious instances of alleged conduct include witnessing Caruso in the work area of the laboratory wearing "a white Ku Klux Klan hood with the letters 'KKK' clearly written on the side of the hood in black magic marker"; "discover[ing] a rope, tied into the form of a 'hangman's noose,' draped and hung over the door of his office"; finding "a doll that was hanging on a string by its neck" hung outside his office door; and co-workers' use of racial slurs.

In addition to this conduct the plaintiff alleges that he was subjected to less overt forms of racial discrimination and retaliation.  For example, Tardds' supervisor, Deboer, stopped communicating with him.  Deboer allegedly also began overburdening Tardd with assignments that demanded much of his time, but would preclude him from being able to position himself to become eligible for a promotion.  Tardd also claims that he was excluded from gatherings and meetings.

Tardd also alleges that he was subjected to adverse employment actions.  In this regard, Tardd received weak job-performance evaluations; the "lowest pay raises in his group"; he was assigned a "mentor"; supervisors began maintaining logs of Tardd's breaks and time away from the office; and, in March 2002, Tardd claims the defendants attempted to remove him from his position as EEO Representative.  Tardd believes these actions were part of a pattern of racially motivated discrimination and, in part, retaliation for his earlier NYSDHR complaint.

According to the amended complaint, no Caucasian co-workers received comparable treatment.  Tardd alleges that he voiced his complaints to his supervisors but that no action was taken.  Despite Tardd's complaints, BNL refused to investigate the matter.

In April 2002, Tardd filed a charge of retaliation with the United States Equal Opportunity Commission ("EEOC").  This charge was amended on two occasions, first in May 2002, and later in April 2004.  On April 30, 2004, the EEOC issued a Notice of Right to Sue to Tardd.  On July 29, 2004, the plaintiffs commenced this action within ninety days of receipt of the Notice.  In addition, Tardd currently has a complaint under investigation with the NYSDHR.

### C.     Otto White

 Otto White is a sixty-one year old African-American man.  White began working for BNL in 1974 as an "industrial hygienist."  White held various positions

6

during his twenty-nine year employment with BNL, but is no longer employed there. White was employed as a "Division Manager within the Safety and Health Services Division" of BNL immediately prior to his resignation in 2003.  White alleges that he was subjected to racial discrimination and retaliation by BNL employees.  In addition to witnessing and being made aware of the alleged conduct directed at Tardd, White alleges he too was discriminated against.  Again, it is unnecessary to recount in detail each specific allegation in the 36 page, 199 paragraph complaint.   The gravamen of White's allegations can be summarized as follows.

### 1.      The "Path Forward Plan"

White alleges that, about the time when Tardd attempted to have his complaints of discrimination  investigated and remedied, management at BNL asked White to serve as Tardd's "mentor."  White believes that BNL requested that he serve in this role with the hope that he prevent Tardd from continuing to complain about his treatment at BNL.  White assumed the role as Tardd's mentor, and immediately began to witness "the arbitrary, non-quantitative performance evaluations" given to Tardd and "how BNL and its employees/agents mistreated Tardd on account of his race."

White alleges that as Tardd's mentor he utilized his management skills in an effort to develop plans to eliminate discrimination at BNL.  One of White's initiatives is referred to as the "path forward plan."  The path forward plan was intended to improve communication among BNL employees; to diffuse racial hostility at BNL;

and to correct alleged disparities in treatment between minority employees and their white co-workers.

In March 2002, White introduced the path forward plan to managers, supervisors, and Human Resources personnel at BNL. According to White, BNL conditioned implementation of the path forward plan on Tardd's withdrawal of his discrimination claims. Both White and Tardd declined to accept BNL's offer. Thus, BNL rejected White's path forward plan and took no further action in regard to investigating claims of on-going discrimination.

### 2. The Assistant Laboratory Director Position

After BNL rejected White's path forward plan, on two separate occasions, White submitted his resume for the position of "Assistant Lab Director for the Environmental Safety, Health and Quality" ("Assistant Lab Director"). This position had become available and BNL had formed a selection committee (the "Committee") for the purpose of filling that role. The individual defendants Bebon, Lowenstein, Gunther, Sheridan, and Brog were members of the Committee. White alleges that he was well qualified for the position based on his long tenure at BNL and his background and experience. According to White, he was the only internal BNL employee qualified for the position.

The first time White applied for the position, the Committee, comprised of all Caucasians, halted the selection process and rendered the position unavailable.

Instead, the Committee delegated the tasks of the Assistant Lab Director to another BNL officer.

Later, White re-submitted his resume for consideration when the position became available again.  White claims that he was still the most qualified candidate for the position; the only candidate with more than twenty-seven years of experience at BNL; the only internal candidate applying for the position; and the only African-American applying for the position.  Notwithstanding his qualifications, White alleges that he was arbitrarily denied the position, and that the Committee that refused to select him was comprised of all white men, some of whom are alleged to have histories of favoring Caucasians over African-American with respect to appointments and promotions.

On June 27, 2003, White filed a charge of retaliation with the EEOC.  On May 10, 2004, the EEOC issued a Notice of Right to Sue to White.  On July 29, 2004, the plaintiffs commenced this action within ninety days of receipt of the Notice.

## II.     DISCUSSION

### A.     Legal Standards

#### 1.     Rule 12(b)(6)

A court may grant a Rule 12(b)(6) motion to dismiss for failure to state a claim only where "'it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'"  Tarshis v. Riese Org., 211

F.3d 30, 35 (2d Cir. 2000), abrogated on other grounds, Swierkiewicz v. Sorema N.A.,

534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), (quoting Conley v. Gibson, 355

U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1975)).  All of the factual allegations in

the complaint must be accepted as true and all inferences drawn in the light most

favorable to the plaintiff.  Id. (citing Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.,

191 F.3d 198, 202 (2d Cir. 1999)).

     In its analysis under Rule 12(b)(6), the court "must confine its consideration to

facts stated on the face of the complaint, in documents appended to the complaint or

incorporated in the complaint by reference, and to matters of which judicial notice

may be taken."  Id. at 39 (citing Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44

(2d Cir. 1991)).  At the pleading stage, the plaintiff in an employment discrimination

case need only provide a "'short and plain statement'" that "'give[s] the defendant fair

notice of what the plaintiff's claim is and the grounds upon which it rests.'"

Swierkiewicz, 534 U.S. at 512-13, 122 S. Ct. at 998 (citing Conley, 355 U.S. at 47, 78

S. Ct. at 103); see also Fed. R. Civ. P. 8(a)(2).  This notice pleading standard expects

"liberal discovery rules and summary judgment motions to define disputed facts and

issues to dispose of unmeritorious claims."  Swierkiewicz, 534 U.S. at 512, 122 S. Ct.

at 998.

10

### 2. Rule 12(c)

The standard for reviewing a motion for judgment on the pleadings under Fed.

R. Civ. P. 12(c) is analogous to the rules pursuant to Rule 12(b)(6). Patel v.

Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001). The Court

must determine whether "the moving party is entitled to judgment as a matter of law."

Burns Int'l Sec. Serv., Inc. v. Int'l Union United Plant Guard Workers of Am., 47 F.3d

14, 16 (2d Cir. 1995). As with a 12(b)(6) motion to dismiss, the issue is not whether

the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer

evidence to support the claims. Villager Pond, Inc. v. Town of Darien, 56 F.3d 375,

378 (2d Cir. 1995).

### 3. Materials Presented Outside the Pleadings

Under both Rule 12(b) and Rule 12(c), the Court may not consider matters

submitted outside the pleadings in dispute, unless notice is given to all parties that the

motion is being converted to a motion for summary judgment and the parties are

afforded a reasonable opportunity to present additional pertinent information.

Gagliardi v. Village of Pawling, 18 F.3d 188, 191 (2d Cir. 1994); Kramer v. Time

Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991); Krijn v. Pogue Simone Real Estate

Co., 896 F.2d 687, 689 (2d Cir. 1990); Sellers v. M.C. Floor Crafters, Inc., 842 F.2d

639, 642 (2d Cir. 1998). The Second Circuit has strictly enforced "the conversion

requirement of a Rule 12(b)(6) [motion] where there is a legitimate possibility that the

district court relied on inappropriate material in granting the motion." Amaker v. Weiner, 179 F.3d 48, 50 (2d Cir. 1999).

In support of its motion the defendant submitted two affidavits with annexed exhibits, most of which were not included in the pleadings.  Consideration of this material in determining a motion to dismiss for failure to state a claim or for judgment on the pleadings would necessitate conversion of the motion into one for summary judgment.  The Court declines to convert this motion into one for summary judgment.  Thus, the defendant's affidavits and the annexed exhibits will be disregarded.  The Court's attention will be limited to the pleadings, which are comprised of an amended complaint and an amended answer.

**B.    Section 1981**

The defendant argues that the plaintiffs' Section 1981 claims should be dismissed (1) in their entirety because the amended complaint fails to set forth any facts that constitute intentional discrimination; and (2) as asserted against the individual defendants Caruso, Bebon, Lowenstein, Gunther, Dierker, Haas, Sheridan, Paul, and Foster, because the allegations in the amended complaint are insufficient to support the individual liability of these defendants under Section 1981.

Section 1981 prohibits intentional race based discrimination in the workplace, see Anderson v. Conboy, 156 F.3d 167, 170 (2d Cir. 1998), and provides for individual liability on the part of non-employers.  See Whidbee v. Garzarelli Food

Specialties, Inc., 223 F.3d 62, 75 (2d Cir. 2000).  In order to make out a claim for individual liability under Section 1981, "a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action . . . . [P]ersonal liability under section 1981 must be predicated on the actor's personal involvement." Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d at 75 (internal quotation marks omitted).  Also, the alleged discrimination must be intentional.  See Krulik v. Bd. of Educ., 781 F.2d 15, 23 (2d Cir.1986) (citations omitted).  The plaintiff is required to make this showing for each particular defendant's personal involvement in the alleged violation.  Patterson v. County of Oneida, 375 F.3d 206, 229 (2d Cir. 2004); see also, e.g., Back v. Hastings on Hudson Union Free School District, 365 F.3d 107, 122 (2d Cir. 2004).  "Personal involvement, within the meaning of this concept, includes not only direct participation in the alleged violation but also gross negligence in the supervision of subordinates who committed the wrongful acts and failure to take action upon receiving information that constitutional violations are occurring." Patterson, 375 F.3d at 229.

Here, the plaintiffs allege that the individual defendants Caruso, Haas, Foster, and Dierker participated in the discriminatory conduct directed at the plaintiff Tardd. For example, they allege that Caruso was seen parading through the laboratory wearing a "KKK hood," (Compl. ¶ 37); Haas ignored Tardd's complaints of discrimination (Compl. ¶ 55); Foster applied company policy against Tardd in a

discriminatory manner and tried to remove him from his position as EEO

representative (Compl.  ¶¶ 70, 71); Dierker, Haas, and Foster were members of the

management and supervisory staff at BNL alleged to have "subjected Tardd to

repeated interrogations, false accusations, surveillance, and wrongful discipline"

because of his race.  (Compl. ¶ 83).

The Court finds that these allegations sufficiently set forth intent and

individual participation for individual liability for the alleged acts that form the basis

of Tardd's Section 1981 claims.  However, there are no allegations in the amended

complaint that the individual defendants Bebon, Lowenstein, Gunther, Sheridan, or

Paul participated in any of the discriminatory conduct directed at Tardd.  Therefore,

the defendants' motion to dismiss is granted with respect to Tardd's Section 1981

claims against Bebon, Lowenstein, Gunther, Sheridan, and Paul.

With regard to White, the plaintiffs allege that the individual defendants

Caruso, Bebon, Lowenstein, Gunther, Sheridan, and Paul participated in

discriminatory conduct.  Caruso was seen parading through the laboratory wearing a

"KKK hood," (Compl. ¶ 37).  White did not witness this incident but became aware of

it through conversations with Tardd and was shown a picture of the hood that Caruso

wore.  Bebon, Lowenstein, Gunther, Sheridan, and Paul were members of the

Committee convened to fill the Assistant Lab Director position.  The members of the

Committee are alleged to have refused to promote White to that position on two

14

separate occasions for discriminatory reasons.  (Compl. ¶ 137).   Dierker and Haas are

the BNL managers to whom White presented the "path forward plan."  White alleges

that Dierker and Haas refused to accept the plan unless White convinced Tardd to

abandon his discrimination claims.  (Compl. ¶ 106-08).

The Court finds that these allegations sufficiently set forth intent and

individual participation for individual liability for the alleged acts that form the basis

of White's Section 1981 claims against Caruso, Bebon, Lowenstein, Gunther, Dierker,

Haas, Sheridan, and Paul. However, there are no allegations in the amended complaint

that the Foster participated in any of the alleged discriminatory conduct directed at

White.  Therefore, the defendants' motion to dismiss is granted only with respect to

White's Section 1981 claims against Foster.

### C.        As to a Conspiracy Under Sections 1985(3) & 1986

Section 1985(3) prohibits "two or more persons" from "consp[iring] . . . for the

purpose of depriving . . . any person or class of persons of the equal protection of the

laws, or of equal privileges and immunities under the laws . . . ."  42 U.S.C. § 1985(3).

Under this law, a plaintiff must allege (1) a conspiracy; (2) for the purpose of

depriving a person or class of persons of the equal protection of the laws, or the equal

privileges and immunities under the laws; (3) an overt act in furtherance of the

conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a

right or privilege of a citizen of the United States.  See Thomas v. Roach, 165 F.3d

137, 146 (2d Cir. 1999).  Significantly, the conspiracy must also be motivated by

15

" 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.' "  Thomas, 165 F.3d at 146 (quoting Mian v. Donaldson, Lufkin & Jenrette Secs., Corp., 7 F.3d 1085 (2d Cir. 1993)).  In addition, the plaintiff must allege that the conspiracy was " 'aimed at interfering with rights' that are 'protected against private, as well as official, encroachment.' "  Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268, 113 S. Ct. 753, 758, 122 L. Ed. 2d 34 (1993) (citation omitted).

The defendants urge the Court to dismiss the plaintiffs' claims under Section 1985(3) because (1) the amended complaint fails allege a legal or factual basis upon which a claim for conspiracy under this section would be cognizable; and (2) the "intracorporate conspiracy doctrine" bars any such claim.   Here, the plaintiffs have not identified which rights the defendants conspired to violate.  Thus, the Court must assume the plaintiff intended to allege that the defendants conspired to violate each statute upon which the plaintiffs base their claims, namely, Titles VI and VII, and 42 U.S.C. §§ 1981.

At the outset, the Court has some doubt about whether the plaintiffs have sufficiently alleged the existence of an agreement between any of the defendants to discriminate against the plaintiffs.  Without an agreement, there can be no conspiracy. Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir.1997) (holding that a Section 1985 conspiracy claim must state a factual basis as "a complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of

constitutional rights cannot withstand a motion to dismiss" (internal citations and quotations omitted)); see Roffman v. City of New York, 2002 WL 31760245, *6 (S.D.N.Y. Dec. 10, 2002) (dismissing the plaintiff's Section 1985 conspiracy claim for, among other things, her failure to allege "specific facts that could give rise to an inference of collusion or conspiracy between [the defendants]").

However, even assuming that the plaintiffs have sufficiently plead the existence of an agreement, Title VII and Section 1981 cannot form the basis of a conspiracy under Section 1985(3). Both the United States Supreme Court and the Second Circuit have held that "in light of the enforcement and conciliation mechanism created by Congress for claims under Title VII, the deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 527 (2d Cir. 1996) (quoting Great Am. Fed. Savs. & Loan Ass'n v. Novotny, 442 U.S. 366, 372, 99 S. Ct. 2345, 60 L. Ed.2d 957 (1979)). Likewise, at least one circuit court of appeals and several district courts in New York have held that alleged violations of Section 1981 cannot form the basis of a conspiracy claim under Section 1985(3). See, e.g., Brown v. Philip Morris, Inc., 250 F.3d 789, 805-06 (3d Cir. 2001); Jenkins v. Arcade Bldg. Maint., 44 F. Supp. 2d 524, 532-34 (S.D.N.Y. 1999). Accordingly, the plaintiffs' claims under Section 1985(3) are dismissed insofar as they are based on alleged violations of Title VII and Section 1981.

17

Furthermore, the Court is of the opinion that the "intracorporate conspiracy doctrine" applies in this case.  " 'Under the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate entity are legally incapable of conspiring together[ ]" ' while acting within the scope of their employment.  Nassau County Employee "L" v. County of Nassau, 345 F. Supp. 2d 293, 304 (E.D.N.Y. 2004) (quotations and other citations omitted); see also Crudele v. City of N.Y. Police Dep't, No. 97 Civ. 6687, 2004 WL 1161174, *5 (S.D.N.Y. May 24, 2004) (citations omitted).

After a preliminary review, the intracorporate conspiracy doctrine appears applicable here.  All of the individual defendants are employees of a single entity, BNL.  However, this does not end the inquiry.  "An exception to the intracorporate conspiracy doctrine applies to individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity."  Bond v. Board of Educ., 1999 WL 151702, *1 (E.D.N.Y. Mar. 17, 1999) (citing Roniger v. McCall, 22 F. Supp. 2d 156, 168 (S.D.N.Y. 1998); Solla, 14 F. Supp. 2d at 257-59)); see also Rini v. Zwirn, 886 F. Supp. 270, 293 (E.D.N.Y. 1995) (denying a motion to dismiss a Section 1985 claim where a town employee, acting as an individual, conspired with other town employees); Agugliaro v. Brooks Bros., Inc., 802 F. Supp. 956, 963 (S.D.N.Y. 1992) (stating that the plaintiff may maintain a Section 1985 claim against a corporation and its agents where the plaintiff alleges that defendants were acting upon their own motives); cf. Yeadon v. New York City Transit Auth., 719 F. Supp. 204,

212 (S.D.N.Y. 1989) (rejecting defense that conspiracy within a corporation cannot exist in the context of a Section 1985[3] claim where a plaintiff adequately alleges a series of separate discriminatory acts by the corporate entity and its agents and where a plaintiff adequately alleges that each defendant possessed an independent, personal conspiratorial purpose). Therefore, whether the exception applies in this case depends on whether each and every defendant is alleged to have been motivated by a personal interest in carrying out the alleged discrimination.

Here, it appears that all of the individual defendants, with one exception, were acting within the scope of their employment when they committed the alleged discriminatory acts. The exception is Caruso, who appeared at BNL in a Ku Klux Klan hood. There are allegations of other incidents that could not have occurred within the scope of employment. However, these other acts— which include the tying of a noose above Tardd's office door; the hanging of a doll on Tardd's office door; and the use of racial slurs—are not attributed to any particular defendant. The Court cannot retain jurisdiction over claims that certain individuals conspired to commit those acts when the persons responsible are not even identified in the amended complaint.

Furthermore, the amended complaint is completely lacking of allegations that any of the defendants, including Caruso, were motivated by an "independent personal stake." Accordingly, the plaintiff's claim for conspiracy under Section 1985 is dismissed, with leave to amend.

19

Similarly, because a claim under 42 U.S.C. § 1986 for failure to prevent the violation of a person's civil rights cannot exist in the absence of a viable Section 1985 claim, the plaintiffs' Section 1986 claim are also dismissed, with leave to amend.  See Brown v. City of Oneonta, 195 F.3d 111, 123 (2d Cir.1999); Posr v. Court Officer Shield # 207, 180 F.3d 409, 420 (2d Cir. 1999); Graham v. Henderson, 89 F.3d 75, 82 (2d Cir. 1996); Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1088 (2d Cir. 1993) (per curiam).

### D.   Remaining Issues Regarding the Settlement Agreement and the Statute of Limitations

The defendants also ask the Court to dismiss (1) all of the plaintiffs' claims against Caruso as time-barred, (2) Tardds' claims related to actions occurring prior to his execution of the Settlement Agreement with BNL; and (3) all of the plaintiffs' claims under Title VII based on actions occurring more than three hundred days prior to the plaintiffs' commencement of this action.

The only remaining causes of action against Caruso are those brought under Section 1981 stemming from the white hood incident.  The statute of limitations applicable to Section 1981 claims for discrimination of the type at issue here is four years.  See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 383, 124 S. Ct. 1836, 1845, 158 L. Ed. 2d 645 (2004).  The plaintiffs commenced this action on July 29, 2004.  Therefore, for the plaintiffs' claim against Caruso to be timely, the challenged conduct must have occurred on or after July 29, 2000.  The date of Caruso's alleged

behavior is not identified in the amended complaint.  We know it occurred before the parties executed their Settlement Agreement in August 2001, because Caruso's conduct formed the basis of that complaint.  (Compl. ¶ 37).

Relying on a document not properly before the Court, the defendants urge the Court to find that Caruso's conduct took place at least one and a half years prior to the Settlement Agreement, or, on or before July 11, 2000 and outside the limitations period.  The defendant's argument is rejected because this extraneous document, submitted as an exhibit to the defendants' motion papers, is not properly before the Court on a motion for judgment on the pleadings.  Based on the pleadings alone there is no way for the Court to determine when Caruso committed this alleged act and whether that date is within the four year statute of limitations.  Thus, it would be inappropriate to dismiss this claim at this stage of the proceedings.

The defendants remaining argument regarding Caruso would also require the Court to consider material beyond the pleadings, namely, the Settlement Agreement. Although the Court notes the existence of the Settlement Agreement, it does so only because Tardd has alleged in the amended complaint that it exists.  The Court declines to consider the terms of the Settlement Agreement, other than those alleged in the amended complaint.

Finally, the defendants contend that all of Tardd's Title VII claims that pre-date June 5, 2001 should be dismissed as time-barred.  Similarly, the defendants argue that White's Title VII claims that pre-date August 31, 2002 should also be dismissed.

Title VII states in relevant part:

> (1) A charge . . . in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . shall be filed by or on behalf of the person aggrieved <u>within three hundred days</u> after the alleged unlawful employment practice occurred.

42 U.S.C. Title VII § 2000e-5(e)(1) (emphasis added).  Under this statute, a complaint is subject to dismissal as time-barred if the underlying claim before the EEOC or the NYSDHR is not filed within three hundred days of the alleged discriminatory acts. <u>See</u> <u>Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759, 763 (2d Cir. 1998); <u>Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.</u>, 990 F.2d 1397, 1401 (2d Cir. 1993).  The three hundred day requirement, however, is not jurisdictional and, similar to a statute of limitations, is subject to the defenses of waiver, tolling, and equitable estoppel.  <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 393, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982).

The defendants argue that any claims asserted in the amended complaint that pre-date the filing of each of the parties' respective charges of discrimination with the EEOC by more than three hundred days should be dismissed.  According to the amended complaint, Tarrd filed his charge of discrimination with the EEOC  "[i]n April, 2002."  (Compl. ¶ 72).  White filed his charge of discrimination with the EEOC on June 27, 2003.  (Compl. ¶ 154).  Therefore, any claims by Tarrd and White arising out alleged conduct occurring before June 5, 2001 and August 28, 2002, respectively,

should be dismissed at untimely.  The Court agrees only with respect to White.

With regard to Tardd, he argues in response, that the defendants should be estopped from raising the statute of limitations defense because Tardd was prevented from pursuing litigation based on his reliance on the terms of the Settlement Agreement.  Tardd asserts, and the Court does not doubt, that he would have pursued his claims in court much earlier absent the Settlement Agreement.  Tardd argues that because BNL breached the Settlement Agreement, he should be permitted to pursue not only those claims that pre-date the statutory three-hundred day commencement period, but also any claims that he abandoned because of the Settlement Agreement.

"[E]quitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay bringing his lawsuit."  Dillman v. Combustion Engineering, Inc., 784 F.2d 57, 60-61 (2d Cir. 1986) (quoting Cerbone v. Int'l Ladies' Garment Workers' Union, 768 F.2d 45, 49-50 (2d Cir. 1985).  Typically, the doctrine is invoked in cases in which an employer has made misrepresentations concerning the statute of limitations or "lulled the plaintiff into believing that it was not necessary for him to commence litigation." Cerbone, 768 F.2d at 50; Bendik v. Credit Suisse First Boston (USA), Inc., No. 02 Civ. 9554, 2004 WL 736852, *4 (S.D.N.Y. Apr. 5, 2004).

"To invoke equitable estoppel, a plaintiff must show that: (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his

detriment."  Bendik, 2004 WL 736852 at *4 (citing Buttry v. Gen. Signal Corp., 68 F.3d 1488, 1493 (2d Cir.1995)).

At this juncture, the Court will not preclude Tardd from raising an estoppel defense.  It would be reasonable for Tardd to abandon pursuit of his prior allegations of discrimination when he entered into the Settlement Agreement and believed that the defendants would comply with their obligations.  Whether or not this defense should be available to Tardd in this case cannot be determined without a more fully developed record.  The Court finds that the plaintiffs allegations in this regard are sufficient to defeat a motion for judgment on the pleadings based on the 300 day statute of limitations.  Accordingly, the defendants' motion to dismiss (1) the plaintiffs' claims against Carus; (2) Tardd's claims that pre-date the Settlement Agreement; and (3) Tardd's claims based on actions occurring before June 5, 2001 is denied.  The defendants motion to dismiss White's claims based on actions occurring before August 28, 2002 is granted.

### E.      As to Racial Discrimination under the NYSHRL

The defendants contend that the plaintiffs cannot bring claims against BNL or any of the individual defendants under the NYSHRL because: (1) any such claims are barred by the federal enclave doctrine; (2) Tardd's claims are barred by the doctrine of election of remedies; and (3) certain of the individual defendants are not "employers" as required by Section 296(1) of the NYSHRL.

24

Initially, the Court notes that the plaintiffs challenge the defendants' capacity to raise certain defenses. First, the plaintiffs argue that the defendants are barred from raising the defenses of election of remedies and the federal enclave doctrine because these defenses not included in the defendants' answer. However, both defenses were properly raised in the defendants' amended answer as the eleventh and twelfth affirmative defenses, respectively. The amended answer was timely served pursuant to Rule 15(a) within twenty days of service of the original answer. Thus, these defenses were properly raised.

Second, the plaintiffs argue that the defendants' waived their right to assert immunity defenses (1) by appearing before the NYSDHR in Tardd's prior discrimination action; and (2) by entering into the Settlement Agreement in that proceeding. As discussed below, the parties do not dispute that the land on which BNL sits is a federal enclave. Federal law applies exclusively in a federal enclave, with limited exceptions. See Paul v. United States, 371 U.S. 245, 83 S. Ct. 426, 9 L. Ed. 2d 292 (1963); Kelly v. Lockhead Martin, 25 F. Supp. 2d 1, 4 (D.P.R. 1998). Those representatives of BNL who appeared before the NYSDHR and executed the Settlement Agreement have no authority to act where Congress has not, nor to independently commission the enforcement of state laws against a federal enclave. See Goodyear Atomic Corp. v. Miller, 486 U.S. 174, 180, 108 S. Ct. 1704, 1709, 100 L. Ed. 158 (1988) ("It is well settled that activities on federal installations are shielded by the Supremacy Clause from direct regulation unless Congress provides 'clear and

unambiguous authorization for such regulation."); Humble Pipe Line Co. v. Waggonner, 376 U.S. 369, 374 (1964) ("A contractual requirement . . . standing alone, cannot be read as manifesting a purpose of the Government to abandon exclusive jurisdiction" over a federal enclave.).  Independent of the question of whether any of the defendants' immunity defenses are viable, the mere fact of BNL's appearance before the NYSDHR on a prior occasion does not, in itself, act as a waiver of its right to assert those defenses in this case.

### 1.      The Federal Enclave Doctrine

A federal enclave is "a portion of land over which the United States government exercises exclusive federal jurisdiction."  Kelly v. Lockheed Martin Servs. Group, 25 F. Supp. 2d 1, 2 (D.P.R. 1998).  When the United States acquires such a portion of land from a State, the laws of that State will remain in effect until abrogated by a federal law.  Kelly, 25 F. Supp. 2d at 5.  "'Whether federal enclave jurisdiction, a form of federal question jurisdiction, exists is a complex question[], resting on such factors as whether the federal government exercises exclusive, concurrent, or proprietorial jurisdiction over the property, when the property became a federal enclave, and whether it has been altered by national legislation.'"  Id.  (quoting Celli v. Schoell, 40 F.3d 324, 328 n.4 (10th Cir. 1994)).  "[A] State may not legislate with respect to a federal enclave unless it reserved the right to do so when it gave its consent to the purchase by the United States."  See Paul v. United States, 371 U.S. 245, 83 S. Ct. 426, 9 L. Ed. 2d 292 (1963).

In this case, the defendants argue, and the plaintiffs do not dispute, that the land upon which BNL sits is a federal enclave.  However, recognition of the BNL land as a federal enclave does not resolve the question of whether the NYSHRL can be applied against BNL and its employees.  This question can only be answered following a determination of what jurisdiction, if any, New York State retained over the land in question at the time of the transfer.

The defendants argue that the only jurisdiction New York reserved with respect to the BNL land was limited exclusively to service of criminal and civil process.  The plaintiffs champion a much broader view—that New York retained, essentially, plenary jurisdiction over all criminal and civil proceedings in the State.  The resolution of this dispute lies in the language of the instrument evidencing the transaction between New York State and the United States.  Conveniently, the defendants have annexed a Deed of Cession, dated July 17, 1933 (the "Deed") to their motion papers.  The Deed purports to record the transfer of jurisdiction over the BNL land to the United States; the terms of the transfer; and the statutory authority under which the transfer was made.  Both parties repeatedly cite to the language in the Deed in support of their respective positions on this issue.  Unfortunately, consideration of the Deed would be inappropriate on the current motion because it was not annexed to the pleadings or incorporated into the pleadings by reference.  Nor is the deed integral to any of the claims in the plaintiffs' amended complaint.  Although the Court could take judicial notice of the Deed, the authenticity of which has not been questioned, the

27

Court declines do so, <u>sua sponte</u>, without allowing the parties to argue the propriety of taking such notice.

In <u>Benjamin v. Brookhaven Science Associates</u>, LLC, No. 04cv3345, and <u>Schiappa v. Brookhaven Science Associates, LLC.</u>, No. 04cv4963, the Court was faced with the identical question that is presented by the present motion. Specifically, the Court was required to decided whether BNL's status as a federal enclave precludes enforcement of the NYSHRL against it. In those cases, the Court considered the Deed when determining the defendants' motion for judgment on the pleadings because the Deed was attached as an exhibit to the defendants answer. Thus, the Deed was not "beyond the pleadings." Also relevant in those cases, as is the case here, is that the authenticity of the Deed was not disputed. Rather, as is also the case here, the parties disagreed about how broadly certain language in that Deed should be interpreted. However, unlike in <u>Benjamin</u> and <u>Schiappa</u>, the Deed is not properly before the Court and will not be considered. Accordingly, the defendants' motion to dismiss plaintiffs' claims under the NYSHRL under the federal enclave doctrine is denied without prejudice. The defendants may revisit this issue following discovery.

### 2.     Election of Remedies

The defendants argue that Tardd's state law claims should be dismissed as barred by the election-of-remedies provision under New York Executive Law § 297(9). Although the defendants have made their motion pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings, an election of remedies defense is jurisdictional

28

in nature.  Moodie v. Fed. Reserve Bank, 58 F.3d 879, 883-83 (2d Cir. 1995).  When

considering a motion to dismiss for lack of subject matter jurisdiction under Rule

12(b)(1), the Court may consider affidavits and other materials beyond the pleadings

to resolve the jurisdictional question.  See Robinson v. Gov't of Malaysia, 269 F.3d

133, 141 n.6 (2d Cir. 2001); Antares Aircraft, L.P. v. Fed. Rep. of Nigeria, 948 F.2d

90, 96 (2d Cir. 1991), vacated on other grounds, 505 U.S. 1215, 112 S. Ct. 3020, 120

L. Ed. 2d 892 (1992); Exch. Nat'l Bank of Chicago v. Touce Ross & Co., 544 F.2d

1126, 1130 (2d Cir. 1976).  The Court must accept as true all material factual

allegations in the complaint but will not draw inferences favorable to the party

asserting jurisdiction.  See Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131

(2d Cir. 1998); Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d

Cir. 1992).

> Section 297(9) of the NYSHRL provides in pertinent part:
>
> Any person claiming to be aggrieved by an unlawful
> discriminatory practice shall have a cause of action in any court of
> appropriate jurisdiction for damages . . . and such other remedies
> as may be appropriate . . . unless such person had filed a complaint
> hereunder or with any local commission on human rights.

N.Y. Exec. Law § 297(9).  It is well-settled that if a litigant files a discrimination

complaint with the NYSDHR, she may not bring a subsequent judicial action based on

the same incident.  See York v. Ass'n of Bar of City of New York, 286 F.3d 122, 127

(2d Cir. 2002) (citing Moodie, 58 F.3d at 882).  After the NYSDHR decides the claim,

a litigant may only appeal that decision to the Supreme Court of the State of New

York.  See N.Y. Exec. Law § 298.  A litigant may bring a subsequent judicial action only when the NYSDHR dismisses the claim for administrative convenience.  Moodie, 58 F.3d at 882 (citing N.Y. Exec. Law § 297).

In this case, Tardd filed a complaint with the NYSDHR alleging that the defendants discriminated against him because of his race and retaliating against him for filing a prior discrimination complaint against them.  The plaintiff admits in the amended complaint that this action is still pending.  (Compl. ¶ 17).  However, on the same day the plaintiffs filed their opposition to this motion, the plaintiffs' attorney sent a letter to the NYSDHR requesting that Tardd's prior action be administratively dismissed.  There is no evidence that the NYSDHR ever acted on Tardd's request.  Thus, it appears that this matter is still pending before the NYSDHR.  Because Tardd elected his remedy by filing his discrimination claims with the NYSDHR, and has not obtained an administrative dismissal, this Court lacks subject matter jurisdiction over Tardd's NYSHRL claims.  Accordingly, the defendants' motion to dismiss Tardd's second cause of action in the amended complaint for violations of Section 296 of the NYSHRL is granted.

### 3.    Individual Liability Under the NYSHRL

Section 296(6) of the NYSHRL states that it is unlawful discriminatory practice for "any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so."  N.Y. Exec. Law § 296(6).  The Second Circuit has held that this language imposes individual liability on "a defendant

who actually participates in the conduct giving rise to a discrimination claim," even though the employee is not alleged to have any power to do more than carry out personnel decisions made by others.  Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995); Chamblee v. Harris & Harris, Inc., 154 F. Supp. 2d 670, 677 (S.D.N.Y. 2001).   Because Tardd's NYSHRL claim are dismissed under the election of remedies doctrine, the Court has only White's claims to consider.  The Court has already reviewed the amended complaint for the purpose of determining whether the allegations in the amended complaint would support individual liability under Section 1981.  That reasoning in that regard is equally applicable here.  Thus, the defendants' motion to dismiss is granted with respect to White's NYSHRL claim against the defendant Foster, and otherwise denied.

### F.      Breach of Contract

#### 1.      As to an Implied Employment Contract

Under New York law, "absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party."  Sabetay v. Sterling Drug, Inc., 69 N.Y.2d 329, 514 N.Y.S.2d 209, 211, 506 N.E.2d 919 (1987).  "The terms of an at-will employee's employment may be modified at any time."  Kempf v. Mitsui Plastics, Inc., No. 96 Civ. 1106, 1996 WL 673812, at *6 (S.D.N.Y. Nov. 20, 1996).  The plaintiffs do not dispute that they were at-will employees.  Thus, they can not proceed on a breach of contract theory.  The plaintiffs' argument that the defendants breached "implied promises that Plaintiffs

would be treated fairly and in good faith and not discriminated against due to race and color, during the course of their employment with [BNL]" presents no contract cause of action.  Although it is unlawful for an employer to terminate an employee for discriminatory reasons, the proper remedy for a person aggrieved in this manner is not a cause of action for breach of contract.  A remedy for such a violation must be pursued under legal theories other than ordinary contract principles, such as Title VII.  See Lazaro v. Good Samaritan Hosp., 54 F. Supp. 2d 180, 184-85 (S.D.N.Y. 1999).

### 2. Settlement Agreement

The plaintiffs also argue that the defendants breached the terms of the Settlement Agreement entered into between BNL and Tardd.  Settlement agreements are contracts and therefore the same legal principles governing cases involving general contract disputes apply.  See Red Ball Interior Demolition Corp. v. Paladessa, 173 F.3d 481, 484 (2d Cir. 1999); Goldman v. Comm'r of Internal Revenue, 39 F.3d 402, 405 (2d Cir. 1994).  To state a claim for breach of a settlement agreement, a complaint need only allege: (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages.  Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996); see Ainbinder v. Potter, 282 F. Supp. 2d 180, 188 (S.D.N.Y. 1993) (denying motion to dismiss where plaintiff alleged the existence of a settlement agreement, the defendant's failure to comply with the terms of the agreement, and damages).

In this case, the allegations in the amended complaint comprising the plaintiffs' claim for breach of the Settlement Agreement are vague and conclusory. They plaintiffs have not attached the Settlement Agreement to the amended complaint. The only specific references to the Settlement Agreement in the amended complaint recount obligations that BNL, in fact, complied with. For instance, in exchange for Tardd's withdrawal of his prior discrimination claims, the defendants promoted Tardd to a T-4 position; issued back-pay to Tardd; and appointed Tardd as BNL's EEO Representative. (Compl. ¶ 35). Indeed, it may be that these acts were all that was required of BNL under the terms of the Settlement Agreement.

However, the amended complaint must be read liberally and the Court must draw all inferences in favor of the plaintiff. See Koppel v. 4987 Corp., 167 F.3d 125, 127 (2d Cir. 1999); Connell v. Signoracci, 153 F.3d 74, 80 (2d Cir. 1998). The Court finds that at this stage the amended complaint provides the short and plain statement that Fed. R. Civ. P. 8 requires to provide notice of the plaintiffs' breach of the Settlement Agreement and the grounds upon which it rests. See Bridgeway Corp. v. Citibank, N.A., 132 F. Supp. 2d 297, 304 (S.D.N.Y. 2001) (denying motion to dismiss a contract claim where the plaintiff provided a "short and plain statement" of the existence of an agreement, performance by the plaintiff, breach of the agreement by the defendant, and damages). The amended complaint identifies the Settlement Agreement; alleges that the Tardd complied with the Settlement Agreement by withdrawing his then pending claims of discrimination; and that the defendants

continued to subject Tardd to racial discrimination, in violation of the terms of the their agreement.

Accepting the plaintiffs' factual allegations as true and drawing all inferences in their favor, the Court finds that Tardd has sufficiently plead a cause of action for breach of the Settlement Agreement.  For this reason, the Court denies BNL's motion to dismiss Tardd's claim for breach of contract.

In sum, the defendants motion to dismiss the plaintiffs' breach of contract claim is (1) granted with respect to claims asserted by White; (2) granted as to any claims based upon the breach of any implied promises attendant to the plaintiffs' employment at BNL; and (3) denied with respect to Tardd's allegations that BNL failed to comply with the terms of the Settlement Agreement.

### G.      Sanctions

Finally, the plaintiffs' request for Rule 11 sanctions is denied.  As an initial matter, Rule 11(c) provides a safe harbor of twenty-one days during which factual or legal contentions may be withdrawn or appropriately corrected in order to avoid sanctions.  Fed. R. Civ. P. 11(c)(1)(A).  Thus, a motion for sanctions may not be filed until twenty-one days after the motion is served upon the opposing party.  See Siegel v. Pro-Ex Securities, No. 02 CIV. 610, 2002 WL 1203851, at *3 (S.D.N.Y. June 3, 2002).  In addition, parties must move for sanctions "separately from other motions or requests."  Fed. R. Civ. P. 11(c)(1)(A).

34

In the present case, the plaintiffs included their request for sanctions within their brief in opposition to the defendants' motion for judgment on the pleadings. Also, the plaintiffs did not wait twenty-one days after serving the application upon the defendants before filing it with the Court.  Thus, they failed to comply with the procedural requirements of Rule 11.  The plaintiffs' noncompliance with this provision requires the denial of the motion for Rule 11 sanctions.

The plaintiffs' request for Rule 11 sanctions was made in a footnote on page thirty-six of the plaintiffs' brief.  The footnote states, in its entirety, the following:

> Although we acknowledge that the Court does not encourage the use of footnotes, we believe that this footnote is warranted in light of the Defendants clear disregard for the Court's valuable time and the Federal Rules.
>
> In fact, as demonstrated above, most of Defendants' assertions in their motion suggest that Defendants' [sic] failed to read the Complaint and/or that Defendants read the Complaint, but decided to submit their frivolous motion/arguments anyway.  In either case, Defendants' bad faith conduct, in submitting their clearly frivolous motion (and/or the many frivolous arguments contained therein) should be considered sanctionable conduct under Federal Rule 11(b)(1).

The Court disagrees with the method and substance of this footnote.

By proceeding in this manner, the plaintiffs' attorneys have disregarded the rules of practice.  As noted above, this request is procedurally deficient under Rule 11.  In addition, this request clearly violates this Court's Individual Motion Practices regarding footnotes.  <u>See</u> Individual Motion Practice ("Individual Rule") IV (B)(i) ("<u>Memoranda of law shall not contain footnotes</u>").  Also,

the plaintiffs' request is patently without merit, as reflected in the dismissal of several

of the claims in the amended complaint.  In this regard, see <u>Estate of Davis v. Trojer</u>,

287 F. Supp. 2d 455, 456 (S.D.N.Y. 2003) (granting cross-motion for Rule 11

sanctions for having filed baseless Rule 11 motion).

## III.    CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the defendants' motion pursuant to Fed. R. Civ. P. 12(c) for

judgment on the pleadings is GRANTED IN PART and DENIED IN PART; and it is

further

**ORDERED**, that Tardd's Section 1981 claims against Bebon, Lowenstein,

Gunther, Sheridan, and Paul are dismissed; and it is further

**ORDERED**, that Tardd's NYSHRL claims are dismissed under the doctrine of

election of remedies; and it is further

**ORDERED**, that White's Section 1981 claims against Foster are dismissed;

and it is further

**ORDERED**, that White's NYSHRL claims against Foster are dismissed; and it

is further

**ORDERED**, that the plaintiffs' Section 1985 and 1986 claims are dismissed,

without prejudice; and it is further

**ORDERED**, that White's Title VII claims based on conduct occurring prior to

August 31, 2002, are dismissed as time-barred; and it is further

**ORDERED**, that the plaintiffs' claims for breach of contract are dismissed, except Tardd's cause of action for breach of the Settlement Agreement; and it is further

**ORDERED**, that the defendants' motion for judgment on the plaintiffs' remaining claims under the NYSHRL based on the federal enclave doctrine is denied, without prejudice and subject to renewal; and it is further

**ORDERED**, that the defendants' motion is otherwise denied; and it is further

**ORDERED**, that the plaintiffs' request for Rule 11 sanctions is denied; and it is further

**ORDERED**, that the parties are directed to contact United States Magistrate Judge Arlene Rosario Lindsay for the purpose of setting a schedule for discovery.

**SO ORDERED**.

Dated: Central Islip, New York
        January 7, 2006

 _/s/ Arthur D. Spatt_
        ARTHUR D. SPATT
United States District Court