**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
MALRY TARDD and OTTO WHITE,

<b><u>MEMORANDUM OF</u></b>

                         Plaintiffs,

                -against-

BROOKHAVEN NATIONAL LABORATORY,
a.k.a. and/or d/b/a BROOKHAVEN SCIENCE
ASSOCIATES, CONRAD FORSTER, in his
individual and official capacity; MICHAEL
GOLDMAN, in his individual and official capacity;
WILLIAM HEMPFLING, in his official and
individual capacity; SUE FOSTER, in her official
and individual capacity; WALTER DEBOER, in his
official and individual capacity; STEVE DIERKER,
in his official and individual capacity; ED HAAS,
in his official and individual capacity; MICHAEL
CARUSO, in his official and individual capacity;
MICHAEL BEBON, in his official and individual
capacity; DEREK LOWENSTEIN, in his official
and individual capacity; WILLIAM GUNTER, in
his official and individual capacity; THOMAS
SHERIDAN, in his official and individual capacity;
PETER PAUL, in his official and individual
capacity; KENNETH BROG, in his official and
individual capacity,

                       Defendants.
-------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
04 CV 3262 (ADS)

**<u>APPEARANCES:</u>**

**LAW OFFICES OF**
**FREDERICK K. BREWINGTON, ESQ.**
Attorneys for the Plaintiffs
50 Clinton Street, Suite 501
Hempstead, New York 11550
        By:   Frederick K. Brewington, Esq.
              Gregory Calliste, Jr., Esq., of Counsel

**MORGAN, LEWIS & BOCKIUS, LLP**
Attorneys for the Defendants
101 Park Avenue
New York, New York 10178
    By:    Christopher A. Parlo, Esq.,
           Amanda N. Slatin, Esq., of Counsel

**SPATT, District J.**

This case arises out of the plaintiffs' claims that the defendants discriminated against them on the basis of their race during the course of their employment at the Brookhaven National Laboratory ("BNL"). The allegations of the parties and the factual background are more fully set forth in this Court's prior opinions ruling on the defendants' motions for judgment on the pleadings and for summary judgment. Tardd v. Brookhaven Nat'l Laboratory, 407 F. Supp. 2d 404 (E.D.N.Y. 2006) (judgment on the pleadings); Memorandum of Decision and Order, dated Mar. 6, 2007 (the "Summary Judgment Order"). Presently before the Court are the defendants' motions (1) for reconsideration and clarification of the Summary Judgment Order; and (2) to sever the claims of the plaintiff Otto White ("White") from the claims of the plaintiff Malry Tardd ("Tardd").

According to the defendants, several of them are misidentified in the caption of the complaint. "Brookhaven National Laboratory, a.k.a. and/or d/b/a Brookhaven Science Associates" should be identified as "Brookhaven Science Associates" ("BSA"). Conrad Foerster is misidentified as "Conrad Forster." William Gunther is misidentified as "William Gunter."

## I.     The Defendants' Motion for Reconsideration and Clarification

### A.     As to the Request for Clarification

The defendants request that the Court clarify one holding of the Summary Judgment Order.  That order granted in part, and denied in part, the defendants' motion for summary judgment.  Specifically, the Court granted partial summary judgment in favor of the defendants and dismissed (1) Tardd's cause of action for breach of a settlement agreement; (2) Tardd's claims that pre-date August 2, 2001; (3) the plaintiffs' Title VI claims; (4) the plaintiffs' Section 1985 and Section 1986 claims; and (5) White's retaliation clause of action to the extent that it was based on conduct occurring prior to the filing of his EEOC charge.  Otherwise, summary judgment was denied.

On March 21, 2007 the defendants made a motion seeking "clarification of one point of [the Summary Judgment Order] and for reconsideration of a second point." The defendants seek clarification as to the defendant Michael Caruso, who they contend should be dismissed from the case.

As noted above, the Summary Judgment Order dismissed Tardd's claims to the extent that they were based on incidents occurring prior to August 2, 2001.  The August 2, 2001 date was relevant because that is the date on which Tardd and BNL executed a Settlement Agreement related to prior allegations of discrimination made by Tardd.  The Court found that through this Settlement Agreement Tardd knowingly

and voluntarily released any claims against the defendants arising out of facts occurring before the agreement was executed.

One of the instances of discrimination that Tardd complained of in this case involved him witnessing the defendant Caruso in the work area of BNL wearing "a white Ku Klux Klan hood with the letters 'KKK' clearly written on the side of the hood in black magic marker." It is undisputed that this incident took place before August 2, 2001. Thus, the Court dismissed any cause of action based on that incident because Tardd waived his right to pursue that claim when he signed the Settlement Agreement.

In their motion for clarification, the defendants argue that this "hood" incident is the only allegation of wrongdoing made by Tardd against Caruso, and they request that the Summary Judgment Order be clarified to reflect that all of the Claims against Caruso have been dismissed and that he is no longer a defendant in this case. A review of the papers reveals that the defendants are correct that the only allegation of misconduct against Caruso is the "hood" incident.

In response, the plaintiffs contend that there are allegations and evidence of Caruso's involvement in other acts of discrimination. First, the plaintiffs direct the Court to several allegations in the third-amended complaint ("Complaint") that Caruso engaged in a conspiracy to discriminate against Tardd. These allegations are

conclusory, and were dismissed by the Court when it granted summary judgment in favor of the defendants on the Tardd's Section 1985 conspiracy claim.

The plaintiffs also cite Tardd's deposition testimony in support of their argument that other claims against Caruso survive. At his deposition, Tardd was asked whether he made derogatory comments about Caruso. Tardd denied having made any such comments. When asked how he would explain the fact that other employees at BNL believe that he did make such comments, Tardd responded that "[i]t would be the same colleagues that were mad[] at me because I went and told about the racial incidents and harassment that were done to me. . . . They retaliated against me." Whoever Tardd was referring as the "colleagues that were mad[] at him," based on the question that he was responding to it is apparent to the Court that these were colleagues other than Caruso, i.e. those "other employees" who believe that Tardd did make such comments about Caruso.

Finally, Tardd's relies on his New York State Division of Human Rights complaint. This complaint refers to Caruso only once, when it states "Mike Caruso wore a KKK hood."

In sum, the only allegation of misconduct in this case against the defendant Caruso is that he wore a "hood with the letters 'KKK' clearly written on the side of the hood in black magic marker." This claim was dismissed because it occurred prior to August 2, 2001. Accordingly, the defendants' request for clarification is granted to

the extent that the Court confirms that, by operation of the Summary Judgment Order, the defendant Caruso should have been dismissed from this case. The caption in this case will be amended accordingly.

## B.    As to Reconsideration

The defendants also ask the Court to reconsider its ruling that denied summary judgment on White's claim of constructive discharge. Pursuant to Local Rule 6.3, a party may request reconsideration if counsel believes that there are "matters or controlling decisions" that the Court overlooked. Local Rule 6.3; see also Hertzner v. Henderson, 292 F.3d 302, 303 (2d Cir. 2002); Yurman Design Inc. v. Shieler Trading Corp., No. 99 Civ. 9307, 2003 WL 22047849, at *1 (S.D.N.Y. Aug. 28, 2003). "A motion for reconsideration should be granted only where the moving party demonstrates that the Court has overlooked factual matters or controlling precedent that were presented to it on the underlying motion and that would have changed its decision." In re Worldcom, Inc. Sec. Litig., 308 F. Supp. 2d 214, 224 (S.D.N.Y. 2004); Colodney v. Continuum Health Partners, Inc., No. 03-7276, 2004 WL 1857568, at *1 (S.D.N.Y. Aug. 18, 2004); see also In Re BDC 56 LLC, 330 F.3d 111, 123 (2d Cir. 2003).

A motion for reconsideration is "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." Dellefave v. Access Temps., Inc., No. 99 Civ. 6098, 2001 WL 286771, at *1, 2001

U.S. Dist. LEXIS 3165, at *1 (S.D.N.Y. Mar. 22, 2001); see also Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995) (stating that reconsideration "should not be granted where the moving party seeks solely to re-litigate an issue already decided"); In re Houbigant, Inc., 914 F. Supp. 997, 1001 (S.D.N.Y.1996) (stating that a Rule 6.3 motion is "not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved").  In addition, "a party in its motion for re-argument may not advance new facts, issues or arguments not previously presented to the court."  O'Brien v. Bd. of Educ. of Deer Park Union Free Sch. Dist., 127 F. Supp. 2d 342, 345 (E.D.N.Y. 2001).

   Keeping this high standard in mind, the Court is persuaded that reconsideration is appropriate in this case because the Court overlooked facts that "might reasonably be expected to alter the conclusion reached by the Court."  Specifically, White testified at his deposition that employees of BNL did not want him to retire and took steps to get him to stay at the laboratory.  White also testified that he was treated fairly by his supervisor prior to his retirement.  These facts bear directly on White's ability to establish the elements of constructive discharge.  See Figueroa v. City of New York, No. 00 CIV. 7559 (SAS), 2002 WL 31163880, at *1 (S.D.N.Y. Sept. 27, 2002) (Scheindlin, J.) (granting reconsideration of the denial of the defendants' motion for summary judgment, because the Court failed to take into account the plaintiff's

deposition testimony that she was not treated poorly because of her gender) (citing Shrader, 70 F.3d at 257).

The defendants seek reconsideration of that portion of the Summary Judgment Order that held that summary judgment should not be granted in favor of the defendants on the White's constructive discharge claim. The Court held that there was a disputed issue of material fact regarding whether a reasonable person in White's position would have felt compelled to resign under his circumstances. This finding was based on White's testimony that the defendant Goldman told him that if he pursued his EEOC complaint, that would put him in an "adversarial relationship with the laboratory"; White's statement in his declaration that the defendants "re-assigned" safety initiatives that he negotiated to new managers; his exclusion from discussions and planning related to safety issues; and the production of and distribution of "articles of Safety" without his input or credit. Although this evidence is not substantial, the Court concluded that it was sufficient to defeat summary judgment on the constructive discharge claim because a reasonable person under those circumstances could have found it so intolerable that he felt that he had no other choice but to resign.

However, in making its determination, the Court did not discuss another element of constructive discharge, namely whether the defendants deliberately created this intolerable environment. On this motion for reconsideration, the defendants argue

that it was error for the Court to not specifically address the issue of intent. The defendants argue further that in determining the motion for summary judgment in the manner it did, the Court overlooked facts that prove that the defendants did not intentionally and deliberately create a working environment that was so intolerable for White that he would be forced to retire. Although the Court finds that most of the defendants' arguments do not warrant reconsideration, there are two instances of deposition testimony by White that the Court did overlook in determining the motion for summary judgment, and that might have changed the outcome had this evidence been considered by the Court.

At his deposition, White was questioned about the timing of his retirement.

Q.    If you thought you were in an adversarial relationship going back to the date that you filed the complaint, why didn't you leave earlier?

A.    It was a communication between Mr. Goldman's office that the laboratory truly was interested in my staying on and was going to find a right resolution for the issue.

My Trust -- my trust in their process and my respect that I was dealing with honorable intentioned [sic] was the reason for staying.

Q.    So people at the laboratory, in particular, Mr. Goldman, told you that you were a valued employee and they wanted to have you stay on at the lab?

A.    Yes.

Q.    Was that repeated to you at the meeting with Mr. Goldman and Ms. Kendall?

A.     Yes.

White Dep. 178-79.  White also testified that, after he was not selected for a

promotion, the defendant Goldman told him that he "value[d him] as an employee."

White Dep. 169.  Finally, White testified positively about his relationship with his

new supervisor after he was not selected for promotion.

> A.     . . . And once Mr. Tarpinian came aboard, I was more convinced that the process had not been fair, that this issue of him being head and shoulder above me and having more contact and being a better manager was clear to me, as I worked for him for -- I reported to him, that was not indeed the case.
>
> Q.     Did Mr. Tarpinian ever do or say anything discriminatory to you?
>
> A.     No, he did not.
>
> Q.     How was your relationship with him?
>
> A.     Courteous.  He was aware of the complaint.  I mean, he was aware of my concern, that I had been a candidate and was disappointed in the process.
>
> Q.     Okay.  Did he treat you fairly in your dealings with him?
>
> A.     To my knowledge.
>
> Q.     Did he try to take away any of your duties and responsibilities or punish or discipline you in any way?
>
> A.     Not that I am aware of.
>
> Q.     During the time that you were working for him, did anything change with respect to your day to day duties and responsibilities?

A.   As with Mr. -- with Mr. Sheridan, he was away, he occasionally left me in charge of operation.

Q.   Mr. Tarpinian did?

A.   Yes.

White Depo. 140-41.

Looking back, the Court finds that this testimony was referred to in the defendants' summary judgment brief. This testimony was overlooked by the Court and may have altered the Court's conclusion on the issue of whether the defendants intended to create an intolerable workplace. Accordingly, the Court grants the defendants' motion for reconsideration of whether summary judgment should be granted in its favor on White's constructive discharge claim. See Figueroa, 2002 WL 31163880, at *1 (granting reconsideration after denying the defendants' motion for summary judgment, because the Court failed to take into account the plaintiff's deposition testimony that amounted to an admission that she had not been treated poorly because of her gender) (citing Shrader, 70 F.3d at 257).

Having granted reconsideration and considering White's testimony in the context of the defendants' motion for summary judgment, the Court now rules that summary judgment should be granted on White's constructive discharge claim. White testified that Goldman and another BNL employee were "truly interested" in keeping him at the laboratory and were working to "find a right resolution." White Dep. 178-79. Goldman told him that he "value[d him] as an employee." White Dep. 169.

Finally, White had a "courteous" relationship with his new supervisor and was treated fairly by him. White Depo. 140-41. Tarpinian did not change anything regarding White's job responsibilities, nor did he punish White or say anything discriminatory to him.

"A plaintiff's claim for constructive discharge requires the plaintiff to prove that her employer deliberately and discriminatorily created work conditions 'so intolerable that a reasonable person in the employee's position would have felt compelled to resign.' " Ferraro v. Kellwood Co., 440 F.3d 96, 101 (2d Cir. 2006). "Evidence that an employer wanted an employee to remain in its employ seriously undermines a claim of constructive discharge." Benette v. Cinemark U.S.A., Inc., 295 F. Supp. 2d 243, 257 (W.D.N.Y. 2003).

In light of White's own testimony that BNL was working to keep him as an employee and that he was treated well by his new supervisor, the Court holds as a matter of law that no rational trier of fact could infer that the defendants were deliberately creating an intolerable working environment. See Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 74 (2d Cir. 2000) (granting summary judgment on the plaintiffs' constructive discharge claims where the defendants "demonstrated an interest in retaining the plaintiffs"); Pena v. Brattleboro Retreat, 702 F.2d 322, 325 (2d Cir. 1983) (finding no constructive discharge in part because evidence showed that defendant wanted employee to remain in its employ); Benette, 295 F. Supp. 2d at 257

(granting summary judgment and dismissing constructive discharge claim when there was evidence that the employer wanted the employee to remain); <u>Wright v. Milton Paper Co.</u>, No. 99 CV 5724 (SJ), 2002 WL 482536, at 17 (E.D.N.Y. Mar. 26, 2002) (granting summary judgment and dismissing constructive discharge claim where the defendant's "actions evinced a desire to retain Plaintiff as an employee, rather than to force her to resign."); <u>Gumbs v. Hall</u>, 51 F. Supp. 2d 275, 283 (W.D.N.Y. 1999) (granting summary judgment in favor of defendant on constructive discharge claim citing the plaintiff's admission that her employer "in effect asked her to tell him what he could do that would persuade her to stay."); <u>see also</u> <u>Martin v. Dupont Flooring Systems, Inc.</u>, No. Civ. A.301CV2189 (SRU), 2004 WL 726903, at *9 (D. Conn. Mar. 31, 2004) (no constructive discharge where employer asked employee to stay and gave her time to reconsider her decision to leave); <u>Lupacchino v. ADP, Inc.</u>, No. 3:02CV2281 (MRK); 2005 WL 293508, at *7 (D. Conn. Jan. 21, 2005) (granting summary judgment in favor of the defendant on claim of constructive discharge after finding that "the fact that [the defendant] actually continued to pay [the plaintiff] her full salary and benefits until March 29 clearly contradict[ed] her claim that it intentionally sought to force her to resign on February 22.").

   In opposition to the defendants' motion for reconsideration, the plaintiffs' brief is mostly devoted to arguing that reconsideration is inappropriate because the defendants are merely attempting to re-litigate their motion for summary judgment by

raising new issues which were never raised in their moving or reply papers in support of summary judgment. The Court disagrees. On pages 20 and 21 of their memorandum in support of summary judgment, the defendants state that several people at BNL told White that he was valuable and tried to convince him to stay; cite to White's deposition testimony quoted above; and cite the Second Circuit case of Pena v. Brattleboro Retreat, 702 F.2d 322, 325 (2d Cir. 1983) (finding no constructive discharge in part because evidence showed that defendant wanted employee to remain in its employ).

Even though the Court previously found a question of fact regarding whether White's working conditions may had become intolerable to him, his own undisputed testimony refutes any argument that the defendants intentionally created an unworkable environment. Indeed, he testified that BNL valued him as an employee, treated him fairly, and wanted him to stay. Accordingly, upon reconsideration, the Court grants the defendants' motion for summary judgment and dismisses White's constructive discharge cause of action.

**II.     As to the Motion to Sever**

Having resolved the remaining issues with regard to the defendants' motion for summary judgment, the Court will now consider whether it is appropriate to sever White's remaining claims from the claims of Tardd. The defendants contend that

White's claims should be severed from Tardd's pursuant to Fed. R. Civ. P. 21, or that the claims should be tried separately pursuant to Rule 42.

Rule 21 governs "misjoinder and nonjoinder of parties" and provides, in part, that "[a]ny claim against a party may be severed and proceeded with separately." Fed. R. Civ. P. 21. Rule 42(b) states, in part, that "[t]he Court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim." Severance under Rule 21 results in entirely independent actions being tried, and two independent judgments. By contrast, separate trials under Rule 42 usually will result in one judgment. 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 2387.

The Court has broad discretion to sever claims under Rule 21 or to grant separate trials under Rule 42, and the Court will consider the same factors under both Rules. See, e.g., Amato v. City of Saratoga Springs, 170 F.3d 311, 316 (2d Cir. 1999); New York v. Hendrickson Bros., Inc., 840 F.2d 1065 (2d Cir. 1988); Corporan v. City of Binghamton, No. 05-CV-1340, 2006 WL 2970495, at *2 n.2 (N.D.N.Y. Oct. 16, 2006); Jeanty v. County of Orange, 379 F. Supp. 2d 533, 549 (S.D.N.Y. 2005). The factors for the Court to consider are: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be

facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims. "Severance requires the presence of only one of these conditions." Cestone v. General Cigar Holdings, Inc., No.00 Civ. 3686RCCDF, 2002 WL 424654, at *2 (S.D.N.Y. Mar. 18, 2002) (quoting Lewis v. Triborough Bridge and Tunnel Auth., No. 97 Cicv. 0607, 2000 WL 423517, at *2 (S.D.N.Y. Apr. 19, 2000)); see also Corporan, 2006 WL 2970495, at *3. The defendants argue that all of these factors weigh in favor of severing the claims of Tardd and White.

### A.    The Plaintiffs' Claims

In this case, White claims (1) discrimination based on the defendants' failure to promote him to the position of "Assistant Laboratory Directory - Environment, Safety, Health and Quality" ("ALD-ESH&Q") in December 2002 or January 2003; and (2) retaliation based on his filing of an EEOC charge in June 2003. Tardd claims (1) discrimination and hostile work environment based upon multiple alleged events from 2001 through 2004; (2) retaliation for filing his EEOC charge in April 2002.

Also, Tardd may also be pursuing a claim of constructive discharge, although there appears to be some confusion over this claim. The Complaint, filed on February 20, 2006, states that "[c]urrently, Mr. Tardd is employed with in [sic] Brookhaven Nation[al] Laboratory as a Vacuum Technical Specialist (Technical Associate II)." The Complaint does not contain a claim for his constructive discharge.

However, in their motion for summary judgment, the defendants acknowledge that Tardd is asserting a claim for constructive discharge ("Tardd's claims focus on alleged acts of racial harassment which he asserts created a hostile work environment and caused him to be constructively discharged."). The Court also stated in the Summary Judgment Order that Tardd was asserting a claim for constructive discharge. That appears not to be the case, although it is not disputed that Tardd did quit his job subsequent to the filing of the original complaint. For the purpose of this motion, the Court will assume that Tardd is, in fact, asserting such a claim.

According to the allegations in the Complaint, Tardd's claims arise out of a series of alleged discriminatory acts, including:

- the presence of a "KKK doll," which was a "doll that was hanging on a string by its neck" (Compl. ¶¶ 46);

- hanging a "noose" on his door (Compl. ¶¶ 41, 42, 43, 44);

- a sign with the word "hypocrite" written on it (Compl. ¶¶ 45);

- being delegated assignment that require the attention of multiple people, but not being provided assistance (Compl. ¶¶ 47, 48);

- the use racial slurs by unidentified employees at BNL and being told that he is "too sensitive" (Compl. ¶ 50);

- bad performance reviews and low pay raise (Compl. ¶ 51, 88-91);

- his belief that White was assigned as a mentor to "silence" him (Compl. ¶¶ 57-60);

- supervisor statements to him that White's "path forward plan" would only be adopted if Tardd dropped his complaints of discrimination" (Compl. ¶¶ 57-60, 61-65, 95-113);

- having his breaks recorded and being required to bring in a doctor's note or a "diagnosis" when Tardd was absent (Compl. ¶¶ 67-68, 87, 92);

- being accused of violating rules regarding his role as EEO representative (Compl. ¶¶ 70-71);

- receiving harassing emails and having a false report issued about him (Compl. ¶ 75);

- being subjected to interrogations, false accusations, surveillance, and wrongful disciplines; having his emails censored and his memos destroyed (Compl. ¶ 83),

The defendants involved in Tardd's claims are

- <u>Goldman</u>, General Counsel at BNL, who did not investigate the claims of a noose, hypocrite sign, or doll; was present at the "path forward meeting" at which it alleged that the path forward plan was rejected because Tardd would not drop complaints of discrimination; subjected Tardd to repeated interrogations, false accusations, surveillance, and wrongful discipline and censored Tardd's emails (Compl. ¶¶ 42, 45, 46, 60, 62, 73, 83);

- <u>Deboer</u>, a supervisor, who stopped communicating with Tardd; delegated assignments to Tardd that often required the attention of multiple people, but did not provide assistants; began tracking Tardd's breaks and sick time; and subjected Tardd to repeated interrogations, false accusations, surveillance, and wrongful discipline and censored Tardd's emails (Compl. ¶¶ 47, 48, 67, 83, 85);

- <u>Sue Foster</u>, an "employee relations" worker, who accused Tardd of violating EEO rules; subjected Tardd to repeated interrogations, false accusations, surveillance, and wrongful

discipline and censored Tardd's emails (Compl. ¶¶ 70-71, 83);

- Haas, the Mechanical Department Head at BNL, who took no action in response to Tardd's complaints of discrimination; and was present at the "path forward meeting"; requested a "diagnosis" as opposed to a doctor's note when Tardd went to a doctor; subjected Tardd to repeated interrogations, false accusations, surveillance, and wrongful discipline and censored Tardd's emails (Compl. ¶¶ 55, 60, 83);

- Hempfling, the "Manager of Personnel (Human Resources)," who assigned White to "mentor" Tardd; was present at the "path forward meeting"; accused Tardd of violating EEO rules; subjected Tardd to repeated interrogations, false accusations, surveillance, and wrongful discipline and censored Tardd's emails (Compl. ¶¶ 57-60, 62, 70-71, 83);

- Dierker, the Chairman of Lightsource, who was present at the "path forward meeting"; and also subjected Tardd to repeated interrogations, false accusations, surveillance, and wrongful discipline and censored Tardd's emails.(Compl. ¶¶ 60, 83); and

- Conrad Foerster, the Manager of Mechanical Section, who took no action in response to Tardd's complaints of discrimination; sent him harassing emails and issued false reports about him (Compl. ¶¶ 55, 75, 83, 85-86).

Tardd does not allege that the defendants Brog, Sheridan, Paul, Bebon, Lowenstein, or Gunther engaged in discriminatory conduct with respect to him.

By contrast, White's claims focus on the fact that he was not selected for the ALD-ESH&Q position (Compl. ¶¶ 116-153), and that he was retaliated against for filing a charge of discrimination (Compl. ¶¶ 154-159).  The defendants involved in these incidents were:

- Brog, the ALD-ESH&Q and Interim ALD-ESH&Q, supervisor, and who allegedly stifled White's advancement because he "preferred Caucasians"; re-assigned safety initiatives away from White; and was on the ALD-ESHQ selection committee (Compl. ¶¶ 117-139, 145);

- Sheridan, the Deputy Director of Operations, who was on the ALD-ESHQ selection committee; failed to address White's complaints of unfairness and discrimination (Compl. ¶¶ 134-135, 137-139, 145);

- Paul, the Deputy Director for Science and Technology and Interim Laboratory Director, who was on the ALD-ESHQ selection committee; failed to address White's complaints of unfairness and discrimination (Compl. ¶¶ 137, 140-143, 145);

- Bebon, the Assistant Laboratory Director for Facilities and Operations, who was on the ALD-ESHQ selection committee (Compl. ¶¶ 137, 145);

- Hempfling, who was on the ALD-ESHQ selection committee; assigned White to mentor Tardd (Compl. ¶¶ 137, 144-45);

- Lowenstein, the Chair of the Collider-Accelerator Department, who was on the ALD-ESHQ selection committee (Compl. ¶¶ 137, 145);

- Gunther, the Special Assistant for Associate Director of the Life Sciences Directorate, who was on the ALD-ESHQ selection committee (Compl. ¶¶ 137, 145);

- Goldman, who contributed to the retaliation by telling White that BNL was in an "adversarial position" with him (Compl. ¶¶ 157-159).

White does not allege that the defendants Deboer, Sue Foster, Haas, Dierker, or Conrad Foerster engaged in discriminatory conduct with respect to him.

The remaining allegations in the Complaint were dismissed either by operation of the Summary Judgment Order, or this Order granting summary judgment on White's constructive discharge claim.

**B.      Consideration of the Severance Factors**

"Although Rule 21 is silent about the grounds for misjoinder, courts have held that [claims] are misjoined when they fail to satisfy [the requirements of] Rule 20(a)." Fong v. Rego Park Nursing Home, 95 Civ. 4445(SJ), 1996 WL 468660, at *2 (E.D.N.Y. Aug. 7, 1996) (citations omitted); see also Puricelli v. CNA Insurance Company, 185 F.R.D. 139 (N.D.N.Y. 1999).  Under Rule 20, the "same transaction [or] occurrence" has been interpreted to include all "logically related claims by or against different parties to be tried in a single proceeding."  Wilson v. Toussie, et al., No. 01 Civ. 4568, 2003 WL 22466219, at * 5 (E.D.N.Y. Oct. 8, 2003) (quoting Blesedell v. Mobil Oil Co., 708 F. Supp. 1408, 1421 (S.D.N.Y. 1989)).

In this case, there is some overlapping of the facts between the plaintiffs with respect to White being assigned as a mentor to Tardd.  Tardd alleges that this assignment of White as his mentor was itself a discriminatory attempt to silence his complaints, and White alleges that his failure to "control" Tardd was a factor that contributed to his lower score during the ALD-ESH&Q interview process.

Even though there is this overlap between the claims of the plaintiffs, the Court finds that their cases are substantially distinct.  Tardd's claims involve numerous

allegations of discrimination occurring over a long period of time between 2001 and 2004.  By contrast, White's claims are more isolated, beginning with the defendants' failure to promote him in late 2002 or early 2003, and continuing with the defendants' alleged discrimination against him for filing and EEOC charge in June 2003.  The only defendants that are common to both of the plaintiffs are Hempfling and Goldman.

In opposition to the motion to sever, the plaintiffs' argue that they were subjected to a "pervasive, company-wide discrimination policy."  Again, the Court disagrees.  As an initial matter, other courts have expressed skepticism that such policy or practice claims are appropriate outside of class-action lawsuits.  See Blake v. Bronx Lebanon Hospt. Ctr., No. Civ. 3827, 2003 WL 21910867, at *5 (S.D.N.Y. Aug. 11, 2003) ("Indeed, the court doubts that a plaintiff can bring a 'pattern and practice' claim in a non-class action complaint.").  However, courts have found a policy or practice in non-class action cases.  See, e.g., Puricelli v. CNA Insurance Company, 185 F.R.D. 139 (N.D.N.Y. 1999), Fong v. Rego Park Nursing Home, No. 95 Civ. 4445, 1996 WL 468660, *3 (E.D.N.Y. Aug. 7, 1996); Blesedell v. Mobil Oil Co., 708 F. Supp. 1408 (S.D.N.Y. 1989).  In those cases, the courts found a policy or practice because the plaintiffs were subjected to the same type of conduct giving rise to the discrimination, even though that conduct occurred at different times or was perpetrated by different people.

In Puricelli, both of the plaintiffs "received poor or borderline performance evaluations, and the basis for those evaluations was the same" and both of the plaintiffs were demoted and replaced by younger employees. 185 F.R.D. at 142-43. In Fong, the Court denied severance to employment discrimination defendants in a case where the plaintiffs held different positions, and were terminated at different times and under different circumstance. 1996 WL 468660, at *3. However, all of the plaintiffs in Fong alleged that they were subjected to intense scrutiny and strict punishment by the defendants, under similar circumstances, while people of other ethnic background and age were not treated that way. Id. In Blesedell, all of the female plaintiffs alleged that they were paid less than male counterparts; complained of comments made to them by a single male employee and other male employees; were allegedly sexually harassed by at least one common actor; complained about harassment to a superior and obtained no response; and they all complained of sexually discriminatory actions by the same supervisor who placed them all on probation and decreased their performance ratings.
708 F. Supp. at 1421.

In contrast to these cases where the plaintiffs were discriminated against by different people at different times, but were treated in a similar manner because of a protected characteristic, the plaintiffs here were not subjected to similar treatment or a similar course of conduct or policy. Tarrd claims to have been victim of a series of

overtly discriminatory acts. White alleges that he was denied a promotion because of latent discriminatory animus. The plaintiffs worked in different departments, for different people, and allege different factual circumstances giving rise to their allegedly discriminatory treatment. Even though there is some overlap of the facts in the plaintiffs' claims, namely having to do with White's appointment as a mentor for Tardd and White's development of the "path-forward" plan, these similarities do not overcome the numerous differences in the circumstances giving rise to the plaintiffs' claims for relief. Thus, this factor weighs in favor of severance. See Corporan v. City of Binghamton, No. 05-CV-1340, 2006 WL 2970495, at 4 (N.D.N.Y. Oct. 16, 2006); Cestone v. General Cigar Holdings, Inc., No.00 Civ. 3686RCCDF, 2002 WL 424654, at *2 (S.D.N.Y. Mar. 18, 2002); Morris v. Northrop Grumman Corp., 37 F. Supp. 2d 556, 581 (E.D.N.Y. 1999) (Spatt, J.); see also Milledge v. Rayonier Inc., No. CV204-133, 2005 WL 1866157, at *2 (S.D. Ga. Aug. 5, 2005) (severing failure to promote claim from other plaintiffs' discrimination claims where the plaintiffs' "right to relief [did] not arise out of the same transactions or occurrences); Watkins v. Hospitality Group Mgmt., Inc., No. 1:02CV00897, 2003 WL 22937710, at *11 (M.D.N.C. Dec. 1, 2003) (severing employment discrimination claims of two plaintiffs where the case involved "two entirely separate sets of events and two separate causes of action" and where the "only ties uniting the claims are the supervisor who allegedly made offensive comments to both plaintiffs"); Weir v. Litton Bionetics, Inc., No. H-85-

2545, 1986 WL 11608, at *6 (D. Md. May 29, 1986) (severing age discrimination claims of different plaintiffs where, although the plaintiffs relied on the same legal theories, "the facts that pertain to the claim of each are quite different").

The Court also finds that there is a serious risk of jury confusion, and prejudice to the defendants, if the plaintiffs' claims are tried together.  Corporan, 2006 WL 2970495, at 4; Cestone, 2002 WL 424654, at *2 ("The potential inferences or conclusions that the jury may draw from the different claims and the strength of the respective cases could unfairly prejudice the defendants, and perhaps one of the plaintiffs.") (quoting Morris, 37 F. Supp. 2d at 581); see also  Weir, 1986 WL 11608, at *6 (noting the high risk of confusion that can result when different facts pertaining to different claims are presented to a single jury).

The Court finds that the plaintiffs will be relying on different documentary evidence and testimony at the trial.  For example, White's documentary evidence will consist of applications, score-sheets, resumes, and other correspondence related to the ALD-ESH&Q selection process and the candidates other than him.  This evidence will have no relevance to Tardd's claims.  On the other hand, Tardd's evidence will consist of testimony and documentary evidence relating to the presence of the "KKK doll," the hangman's noose on his door, the sign with the word "hypocrite," the use of racial slurs, his poor performance reviews, his low pay raise, the increased supervision of his breaks and sick time, the accusations that he violated rules regarding his role as EEO

representative, his receipt of harassing emails, and the defendants' failure to investigate his complaints.  None of this evidence will be relevant to the White's application for the ALD-ESH&Q position.

There will some similar evidence regarding White's appointment as Tardd's mentor and the path-forward plan and whether that assignment was given weight in the ALD-ESH&Q selection process,  but this evidence is only a small part of the evidence that will be presented by the plaintiffs.  See Cestone, 2002 WL 424654, at *2; see also Sidari v. Orleans County, 174 F.R.D. 275, 282 (W.D.N.Y. 1996) ("[E]ven if some evidence may be relevant in both cases, that alone, does not warrant consolidation of the two actions.  For the same reason, the fact that some of the defendants are common to both cases . . . fails to warrant consolidation of the two cases."); see also Watkins, 2003 WL 22937710, at *11 (some overlap in the witnesses and some overlapping factual evidence did not require joint trial); cf. Lewis v. Triborough Bridge and Tunnel Auth., No. 97 Cicv. 0607, 2000 WL 423517, at *4 (S.D.N.Y. Apr. 19, 2000) (severance not appropriate if "separate trials will require substantial overlap of witnesses or documentary proof") (emphasis added).  Also, the fact that White may be called as a witness in Tardd's case, and vice versa, does not mandate that the cases be tried together.  Sidari, 174 F.R.D. at 282.

If the plaintiffs' claims are tried together, the Court will be required to repeatedly instruct the jury regarding the appropriate use of evidence as it relates to a

particular plaintiff or each defendant. <u>Cestone</u>, 2002 WL 424654, at *2("Two shorter trials will be more efficient and less expensive than one long, combined trial in which the Court must constantly caution the jury to not consider evidence that is irrelevant or inadmissable against a particular defendant.").  Of particular concern to the Court is the potential prejudice to the defendants in White's case when the jury is presented with evidence of the "KKK doll," the "noose" on Tardd's door, and the use of racial slurs in Tardd's presence.  <u>See</u> <u>Morris</u>, 37 F. Supp. 2d at 581; <u>see also</u> <u>Watkins</u>, 2003 WL 22937710, at *11 (noting the risk that the jury may confuse evidence of separate incidents when looking for discriminatory intent towards one plaintiff alone).

The Court agrees with the defendants that if White's claims are tried with Tardd's, there is a serious risk that the individual defendants named only by White, and whose only connection to this case was their involvement on the ALD-ESH&Q selection committee, may be forced to defend against these highly inflammatory accusations with which they were not involved.  This risk of prejudice does not exist if the cases are tried separately.

Finally, there is no risk of inconsistent verdicts.  A finding that the defendants discriminated against one of the plaintiffs and not the other would not be legally or factually inconsistent.  <u>Watkins</u>, 2003 WL 22937710, at *11.  The Court finds that the circumstances, facts, and legal issues surrounding the separate claims of Tardd and White warrant separate trials.  Accordingly, the Court grants the defendants' motion

for separate trials pursuant to Rule 42 of the Federal Rules of Civil Procedure. Tardd and White will receive separate trials against the defendants.

III.    **CONCLUSION**

Based on the foregoing, it is hereby

**ORDERED**, that the defendants' motion for clarification of the March 2, 2007 Memorandum of Decision and Order is granted; and it is further

**ORDERED**, that the plaintiffs' claims against the defendant Michael Caruso are dismissed; and it is further

**ORDERED**, that the defendants' motion for reconsideration is granted; and it is further

**ORDERED**, that upon reconsideration, the defendants' motion for summary judgment on White's constructive discharge claim is granted, and this claim is dismissed; and it is further

**ORDERED**, that the defendants' motion for separate trials pursuant to Rule 42 of the Federal Rules of Civil Procedure, is granted, in that the Court Orders that the plaintiffs Tardd and White will receive separate trials against the defendants against whom they assert claims; and it is further

**ORDERED**, that the Clerk of the Court is directed to amend the caption of this case to reflect the dismissal of Michael Caruso as a defendant, which will read as follows:

```
----------------------------------------------------X
```
MALRY TARDD and OTTO WHITE,

                    Plaintiffs,

           -against-


BROOKHAVEN NATIONAL LABORATORY,
a.k.a. and/or d/b/a BROOKHAVEN SCIENCE
ASSOCIATES, CONRAD FORSTER, in his
individual and official capacity; MICHAEL
GOLDMAN, in his individual and official capacity;
 WILLIAM HEMPFLING, in his official and
individual capacity; SUE FOSTER, in her official
 and individual capacity; WALTER DEBOER,
in his official and individual capacity; STEVE
DIERKER, in his official and individual capacity;
ED HAAS, in his official and individual capacity;
MICHAEL BEBON, in his official and individual
capacity; DEREK LOWENSTEIN, in his official
and individual capacity; WILLIAM GUNTER, in
his official and individual capacity; THOMAS
SHERIDAN, in his official and individual capacity;
PETER PAUL, in his official and individual
capacity; KENNETH BROG, in his official and
individual capacity,

                   Defendants.
```
----------------------------------------------------X; and it is further
```

      **ORDERED**, that separate trial of the case of the plaintiff Tardd against the

defendants BNL, Goldman, Hempfling, Deboer, Foster, Haas, Dierker, and Conrad

Foerster is set down for jury selection on July 2, 2007 at 9:00 a.m.; and it is further

**ORDERED**, that the separate trial of the case of the plaintiff White against the

defendants BNL, Goldman, Hempfling, Brog, Sheridan, Paul, Bebon, Lowenstein, and

Gunther is set down for jury selection on July 23, 2007 at 9:00 a.m.

**SO ORDERED**.

Dated: Central Islip, New York
      May 8, 2007

                                               */s/ Arthur D. Spatt*
                                                ARTHUR D. SPATT
                                     United States District Court